UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

PAUL ALLEN ADAMS,

                Plaintiff,

v.                                                      Case No. 17-cv-699-pp

DR. LARSON, REBECA TRUEN, HOLLY MEIER,
RANDALL HEPP, CANDI WHITMAN, SAMANTHA FLOETER,
ROBERT FRANK, GREG PHAL, REGINA HENRICH,
JODY DEROSA, K. BUSIE, DR. ROBY, DR. WATERMAN,
MS. MAJHAR, M. PATTEN, MS. STROOK, MS. BARTEL,
SGT. DEBREES, TERI KISER, DAWN P., and
JOHN AND JANE DOES,

                Defendants.

---

**ORDER SCREENING PLAINTIFF'S AMENDED COMPLAINT (DKT. NO. 33), DENYING PLAINTIFF'S MOTION TO JOIN ADDITIONAL CLAIMS (DKT. NO. 35), AND DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTIONS TO APPOINT COUNSEL (DKT. NOS. 42, 46)**

---

With the court's permission, the plaintiff, who is representing himself, filed an amended complaint under §1983, alleging that the defendants violated his civil rights. Dkt. No. 33. He subsequently filed a motion entitled "Permissive Joinder Under Fed. Rules C. Proc. 18(a), and 20(a), & 28 U.S.C.S 1915(g)." Dkt. No. 35. He also has filed two motions asking the court to appoint counsel to represent him. Dkt. Nos. 42, 46.

**I.**     **Screening of the Amended Complaint (Dkt. No. 33)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. The PLRA requires the court to screen complaints, including amended complaints, brought by

prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To proceed under 42 U.S.C. §1983, a plaintiff must allege that: 1) someone deprived him of a right secured by the Constitution or laws of the United States; and 2) the person who deprived him of that right was acting under color of state law. Buchanan-Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court gives a *pro se* plaintiff's allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

A.  The Plaintiff's Allegations

The plaintiff was transported to Fox Lake Correctional Institution on August 28, 2014. Dkt. No. 33 at 3. He alleges that, shortly after arriving, he

2

started having diarrhea and painful bowel movements several times each day. Id. A little more than two months later, he allegedly submitted a health services request (HSR) to the health services unit (HSU). Id. The plaintiff states that he was seen by a nurse (whose name he couldn't make out from the request form), and he was given fiber pills and/or anti-diarrhea pills. Id. The plaintiff explains that he submitted additional HSRs, complaining of extreme pain and bleeding. Id. The plaintiff states that every time he went to HSU, he was seen by nurses. Id. at 3-4. The plaintiff asserts that defendant Dawn P. was one nurse he saw; he alleges that she was very abrasive, would try to intimidate him, and implied that he was faking in order to get better food. Id. at 4.

The plaintiff says that eventually, he saw defendant nurse Truen, who basically told him he "would have to deal with [his] problems because there were no specific treatments in the DOC for special foods." Id. The plaintiff states that Truen refused to examine him, even after he told her more than once that he was bleeding from his rectum, and that he was experiencing extreme pain from bowel movements and was having diarrhea up to seven times each day. Id. He told Truen that he thought he had irritable bowel syndrome, and that there were records from outside doctor visits that might help figure out what was wrong. Id. Truen allegedly told the plaintiff that she would get his outside medical records, but the plaintiff alleges that she never did. Id.

The plaintiff filed a complaint against Truen with defendant Holly Meier, the HSU Manager. Id. The plaintiff also informed Meier of his medical condition

3

and asked her "to have him examined physically if she wouldn't do so herself." Id.

Shortly after, the plaintiff states that he saw defendant Dr. Larson. Id. The plaintiff alleges that Dr. Larson was very abrasive, did not physically examine the plaintiff, and implied that the plaintiff was just trying to get a prescription for Boost, a protein supplement. Id. Nonetheless, Dr. Larson prescribed Boost. Id. The plaintiff asserts that he told Larson that Boost would not stop the bleeding and diarrhea, and that the plaintiff felt like he needed different food; the plaintiff believed he had IBS. Id. The plaintiff asserts that Larson refused to examine him, and told him that Larson was going to refer the plaintiff back to Truen. Id.

The plaintiff explains that he filed several complaints with the Wisconsin Department of Safety and Professional Services against Truen. Id. He alleges that when Truen found out, she was "livid," and told the plaintiff that she did not want to "hear [his] sniveling" and that "there is nothing wrong with you." Id. at 5. The plaintiff states that he continued to tell her that he was in extreme pain, bleeding from his rectum almost daily, and having diarrhea. Id. According to the plaintiff, Truen refused to examine him. Id.

In February 2015, Meier scheduled a "board meeting" with herself, Dr. Larson, defendant nurse practitioner Robert Frank, defendant Jody DeRosa, defendant Greg Phal, defendant M. Patten and other unidentified Fox Lake Correctional Institution personnel. Id. The plaintiff asserts that he would have to "defend [himself]" at this meeting. Id. The plaintiff informed the board of the

details of his symptoms, and that he believed that he was suffering from IBS. Id. According to the plaintiff, Dr. Larson ordered Frank to order labs. Id. In addition, Phal suggested that the plaintiff be put on a Halal[1] diet, which did not contain any soy and would contain meat four times per week. Id. The plaintiff also alleges that no one at the board meeting physically examined him, although he was prescribed antidiarrheal pills, fiber pills, and a snack bag to stop the extremely painful, tortuous pain, bleeding and extreme diarrhea. Id.

After the board meeting, the plaintiff states that he had blood work done and a colonoscopy. Id. The plaintiff states that "supposedly" these tests revealed that the plaintiff did not have stomach issues. Id. The plaintiff states that he was never checked for hemorrhoids or rectal varices,[2] even though he was being treated for Hepatitis C and esophageal varices. Id. The plaintiff states that the Halal meal ended up being 100% soy. Id. at 6.

The plaintiff says that he wrote to defendant warden Randall Hepp several times; he also complained to Phal and Regina Henrich about his dietary needs. Id. The plaintiff states that Henrich, after coming to see him six times and doing a complete review of his medical files, decided to prohibit the plaintiff from receiving a special diet, even though she acknowledged that he required one. Id. According to the plaintiff, Henrich worried that other inmates would see what the plaintiff was eating and want it, too. Id.

---

[1] A diet lawful under Islamic law.
[2] According to an article in the "World Journal of Hepatology," diagnosis of rectal varices is typically based on lower endoscopy, such as a colonoscopy, which the plaintiff concedes he received. See https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4691702/

5

The plaintiff states that he continued to have severe pain for more than a year. Id. He states that, every time he was seen in HSU, he received the runaround. Id. He states that personnel would listen to his complaints, but do nothing. Id. According to the plaintiff, Nurse Dawn advised more than once that he buy food from the canteen to see if that would help. Id.

The plaintiff states that he repeated his symptoms (and his agonizing pain) to Frank, who was also treating him for Hepatitis C. Id. at 6. According to the plaintiff, Frank would listen to the plaintiff and prescribe creams, suppositories, fiber pills or wipes, but he did not physically examine the plaintiff for nearly two years. Id. at 7. When Frank did finally physically examine the plaintiff, he referred the plaintiff for a surgical consult, which was approved in February 2016. Id. After the consult, the surgeon determined that the plaintiff needed surgery for hemorrhoids and three thrombosed hemorrhoids. Id. The plaintiff alleges that, after Frank asked why it was taking so long to schedule the surgery, defendant Samantha Floeter admitted she had forgotten to schedule it. Id. It then took her an additional five to six months to schedule the surgery. Id.

The night before his surgery, the plaintiff asserts that he was supposed to give himself two enemas in the "sick cell" at the HSU. Id. at 11. The plaintiff states that defendant DeBrees delivered the enemas to his cell. Id. The plaintiff told DeBrees that he did not have room in the general population bathroom to do the enemas, and he asked DeBrees to call HSU. Id. DeBrees called HSU and was told by defendant Jane Doe nurse to tell the plaintiff to lie on the floor next

to the stall in the general population bathroom to do the enemas. Id. The plaintiff asserts that this was the typical attitude of everyone he interacted with in HSU. Id.

The plaintiff had surgery on September 20, 2016, and again on March 30, 2017. Id. at 9. On August 30, 2017, the plaintiff allegedly complained to Frank that he was having problems with hemorrhoids, including blood in his underwear and additional pain. Id. The plaintiff states that Franks did not physically examine him. Id.

The plaintiff alleges that, during this time, he asked for pain medication, but the most he ever got was Aleve. Id. at 8. The plaintiff also informed defendant K. Busie, who has authority to make lateral transfers to other prisons, of his symptoms and pain. Id. Busie denied the plaintiff's request for a transfer and told him he needed to address his concerns to HSU. Id. at 8-9. The plaintiff also told defendant Bartel, his unit social worker, and Strook, another unit social worker, about his symptoms. Id. at 9. The plaintiff states that they offered their sympathy but told them their hands were tied. Id. The plaintiff also asserts that he complained to defendant Majhar, the institution chaplain, who said she would talk to some people to see what she could do to help. Id. The plaintiff states that he also wrote to state senator Lena Taylor and Congresswoman Gwen Moore (neither of whom are defendants). Id.

Finally, the plaintiff explains that the first three and a half years he was at Fox Lake, the tap water was tea- or coffee-colored. Id. at 10. He states that, during the six months prior to the date he filed his complaint, the water quality

7

had improved. Id. He states that all of a sudden, he stopped having diarrhea. Id. The plaintiff suggests that his medical issue may have been caused by the water. Id.

The plaintiff also alleges that, after he saw an article in the prison legal news about tainted water at Fox Lake and the dangers it posed, he made requests to defendant Candi Whitman that he be permitted to receive bottled water. Id. The plaintiff asserts that Whitman denied his request, telling him that "magnesium is good for you." Id. The plaintiff says he told Whitman that the issue was *manganese*, and that he asked to be tested for heavy metal poisoning, but that Whitman said there was no evidence for it. Id.

B. The Court's Analysis

Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates 'deliberate indifference to the serious medical needs of prisoners.'" Gutierrez v. Peters, 111 F.3d 1364, 1369 (7th Cir. 1997). This standard contains both an objective element (that the medical needs be sufficiently serious) and a subjective element (that the officials act with a sufficiently culpable state of mind). Id.

The court concludes that the plaintiff has stated sufficient facts to allow him to proceed on a deliberate indifference claim against nurses Dawn P. and Truen, nurse practitioner Frank and Dr. Larson, based his allegations that they ignored or minimized his complaints about his medical condition, refused to provide him with pain relief and refused or delayed a physical examination. The court also will allow the plaintiff to proceed on a deliberate indifference claim

8

against Henrich, based on his allegations that she denied the plaintiff a special diet even though she acknowledged he needed one; Whitman, based on his allegations that she denied his request for bottled water despite independent information that people with his condition should not drink the tap water; Floeter, based on his allegations that she delayed scheduling the plaintiff's surgery even after Frank reminded her to schedule it; nurse Jane Doe and correctional officer DeBrees based on his allegations that they refused to allow him the use of a private area to self-administer two enemas; and Hepp, based on his allegations that, despite the plaintiff complaining about HSU's alleged inadequate response, he did not intervene.

The court will not, however, allow the plaintiff to proceed with a claim against Meier. The plaintiff alleges that, shortly after he complained to her about Nurse Truen, she scheduled an appointment for him with Dr. Larson. He also alleges that, because of his continuing complaints, she scheduled a board meeting with multiple medical professionals in order to assess his condition. These facts show that Meier was responsive to the plaintiff's complaints and used her limited role to address the plaintiff's needs by scheduling evaluations with medical providers who could treat him. The court cannot reasonably infer from these allegations that Meier was deliberately indifferent to the plaintiff's needs.

The court also will not allow the plaintiff to proceed against Jody DeRosa, Greg Phal, M. Patten and other unnamed staff who were present at the board meeting. Following the plaintiff's presentation to the board, the plaintiff asserts

that Dr. Larson ordered labs and a colonoscopy, Phal suggested a change to the plaintiff's diet,[3] and someone (the plaintiff does not clarify who) ordered antidiarrheal pills, fiber pills and a snack bag. The plaintiff argues that none of these board members performed a physical exam of the plaintiff, but doing so in that setting would have been inappropriate. Instead, board members ordered bloodwork, an off-site examination in the form of a colonoscopy and other short-term treatment. The court cannot draw an inference that these individuals were deliberately indifferent, given the plaintiff's allegations about his limited contact with these defendants and their responses.

The plaintiff also fails to state a claim against Busie, Majhar, Strook and Bartel. As the Court of Appeals for the Seventh Circuit has explained:

> Public officials do not have a free-floating obligation to put things to rights . . . . Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job. The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under § 1983 for not being ombudsmen.

Burks v. Raemisch, 555 F.3d 592, 595 (7th Cir. 2009). The law does not impose responsibility on every state actor to fix every wrong brought to their attention. The plaintiff does not allege (nor can the court reasonably infer) that

---

[3] The fact that the diet suggested by Phal did not resolve the plaintiff's suffering does not change the court's analysis. The plaintiff states that he later complained to Phal and Henrich that the diet wasn't working. He also alleges that Henrich saw him at least six times in response to his complaints and that it was her decision (not Phal's) to refuse to make further changes to the plaintiff's diet. There was no need for both Phal and Henrich to respond to the same complaints. The reasonable inference is that Phal, who was the food services coordinator, deferred response to Henrich, who was a dietician. See Burks v. Raemisch, 555 F.3d 592, 595 (7th Cir. 2009 ("Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job.")

these defendants had authority or responsibility to intervene in his medical treatment. As such, he fails to state a claim against them. See also, Hildebrandt v. Ill. Dept. of Natural Resources, 347 F.3d 1014, 1039 (7th Cir. 2003) (holding that an individual defendant must have caused or participated in a constitutional violation).

Finally, the plaintiff fails to state a claim against Roby, Waterman and Kiser. Although he includes their names in the caption of his amended complaint, he makes no allegations against them, and does not explain how they allegedly violated his constitutional rights.

## II. Permissive Joinder Under Fed. Rules C. Proc. 18(a), and 20(a), & 28 U.S.C. S. 1915(g) (Dkt. No. 35)

The facts the plaintiff alleged in his amended complaint involve suffering he endured between 2014 and 2016 relating to what turned out to be severe hemorrhoids and, he believes, heavy metal poisoning. About three months after he filed his amended complaint, the plaintiff filed a motion for "permissive joinder." Dkt. No. 35. The motion described two different incidents: denial of a soft diet after a September 2017 surgical procedure, despite doctors' orders, id. at 1-2, and severe knee pain between October 2016 and March 2018, which he alleges staff ignored or failed to treat, id. at 2-3.

Fed. R. Civ. P. 18(a) allows a plaintiff to join "as many claims as [the party] has against an opposing party." Fed. R. Civ. P. 20(a)(2) allows a plaintiff to join several defendants in one case if his claim against them arises from the same transaction, occurrence or series of occurrences, or if there is a question of law or fact common to all the defendants.

The plaintiff's motion asserts claims about difference occurrences than the one he alleged in his amended complaint. It asserts claims against some of the same defendants he named in his amended complaint, and some new ones. The only thing the new claims and defendants have in common with the claims in the amended complaint is that all the claims are Eighth Amendment deliberate indifference claims. This is not enough to allow the plaintiff to join claims about unrelated events, and involving different defendants, in the same case.

The Seventh Circuit has addressed "buckshot" complaints that do not show that all of the defendants named participated in the same transaction or series of transactions, or that do not involve a common question of fact. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). It has indicated that district courts should not allow such complaints.

This does not mean that the plaintiff cannot sue regarding the 2017 denial of a soft diet, or the 2016-2018 knee issue. He simply must bring those claims in a separate lawsuit. The court will deny the motion.

### III. Motions to Appoint Counsel (Dkt. Nos. 42, 46)

After he filed his complaint, the plaintiff was transferred to Chippewa Valley Correctional Treatment Facility. Dt. No. 40. He then filed a motion asking the court to appoint counsel to represent him. Dkt. No. 42. He explained that the new facility did not allow him enough time in the library to do what he needed to do to prosecute his lawsuit. Id. at 1. He also indicates that he had a jailhouse lawyer helping him at Fox Lake; he did not have such

help at Chippewa Valley. Id. He reminded the court that he suffers from cognitive and psychological issues that make it difficult for him to litigate. Id. at 2. He stated that he was in a ten-man cell, and that his cellmates had various disorders; he stated that he could not think, relax or sleep under those circumstances. Id. Finally, he indicated that the issues in his case were long and complicated, and that he'd need expert testimony and independent doctors. Id.

Subsequently, the plaintiff was transferred to Jackson Correctional Institution. Dkt. No. 45. He then filed a second motion for appointment of counsel. Dkt. No. 46. In this motion, he explains that he continues to suffer the knee pain he referenced in his joinder motion, and explains the doctors he has seen and the diagnoses he has received. Id. He says that despite having suffered for a long time and having received diagnoses and treatment, the staff at Jackson tell him that he must start all over again there. Id. at 3. He also alleges that he is being starved, being fed less than 60% of the food that the other inmates receive. Id. He has complained about this, and has been ignored. Id. He also complains of a disciplinary hearing where he did not receive process, was but found guilty. Id. at 3-4. He says that the court should not be fooled by the fact that he is able to explain what has happened to him, and that he needs a lawyer because he cannot compete against the attorney general. Id. at 5. He asks for a compassionate lawyer, concerned with human rights. Id. at 6. Finally, he indicates that he is still suffering from the issues he raised in his amended complaint. Id.

In a civil case, the court has the discretion to recruit a lawyer for individuals unable to afford one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). First, the plaintiff must make reasonable efforts to hire a lawyer on his own. Pruitt v. Mote, 503 F.3d 647, 653 (7th Cir. 2007). Generally, in this district, a plaintiff must contact at least three lawyers and ask them to represent him. The plaintiff must also give the court evidence that he contacted the lawyers. For example, he can tell the court the names of the lawyers he contacted and when he contacted them; he can also send the court copies of the letters he mailed to the lawyers or copies of the responses he received from the lawyers.

After the plaintiff demonstrates that he has made those efforts, the court must decide "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it." Navejar, 718 F.3d at 696 (citing Pruitt, 503 F.3d at 655). The court looks, not only at a plaintiff's ability to try his case, but also at his ability to perform other "tasks that normally attend litigation," such as "evidence gathering" and "preparing and responding to motions." Id. "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyering willing and able to volunteer for these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

14

The plaintiff has not provided the court with evidence showing that he has tried to find a lawyer on his own. The court will deny the plaintiff's motion on this basis.

Even if the plaintiff had shown that he has made reasonable efforts to hire a lawyer on his own, the court still would have denied his motion at this point. The court understands that the plaintiff is very frustrated. He suffers from a number of medical conditions, as well as cognitive and psychological conditions. He has been in three different facilities since he started this lawsuit. This court, due to its heavy case load, has taken far longer than it would have liked screening the plaintiff's amended complaint; the court has added to the plaintiff's frustration. But despite these many understandable frustrations, the court has been able to understand the plaintiff's claims. He is able to clearly lay out what has happened to him.

The court is allowing the plaintiff to proceed on his claims regarding the hemorrhoids. The next step in the process will be for the plaintiff's amended complaint to be served on the defendants. Below, the court gives them a deadline by which to answer or otherwise respond to the plaintiff's complaint. Once the defendants have responded, the court will issue a scheduling order, setting deadlines for the parties to exchange information about the case. Until then, there is nothing that the plaintiff needs to do.

In answer to the plaintiff's question, yes—he must file a separate lawsuit regarding his knee (as the court explained above), and if he wishes to do so, a separate lawsuit regarding the post-surgical denial of a soft diet. But this case

now will proceed. And if the time comes when the tasks that the plaintiff needs to complete in this case are too difficult for him to manage on his own, he may renew his motion to appoint counsel.

IV.  **Conclusion**

The court **DENIES** the plaintiff's motion to join additional claims. Dkt. No. 35.

The court **DENIES without prejudice** the plaintiff's motions to appoint counsel. Dkt. Nos. 42, 46.

The court **DISMISSES** defendants Meier, Phal, DeRosa, Busie, Roby, Waterman, Majhar, Patten, Strook, Bartel and Kiser, because the plaintiff has failed to state a claim against them.

The court further **ORDERS** that, under an informal service agreement between the Wisconsin Department of Justice and this court, copies of the plaintiff's amended complaint (dkt. no. 33) and this order be electronically sent to the Wisconsin Department of Justice for service on defendants Larson, Truen, Hepp, Whitman, Floeter, Frank, Henrich, DeBrees and Dawn P.

The court further **ORDERS** that, under the informal service agreement between the Wisconsin Department of Justice and this court, defendants Larson, Truen, Hepp, Whitman, Floeter, Frank, Henrich, DeBrees and Dawn P shall file a responsive pleading to the complaint within sixty days of receiving electronic notice of this order.

The court further **ORDERS** that the parties shall not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

The court **ORDERS** that the plaintiff shall submit all correspondence and legal materials to:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 East Wisconsin Avenue
>Milwaukee, Wisconsin 53202.

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay processing of the case.

The court advises the plaintiff that if he does not timely file pleadings and other documents by the deadlines the court sets, the court may dismiss his case for failure to prosecute. The parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated in Milwaukee, Wisconsin this 27th day of August, 2018.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**United States District Judge**