UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

PAUL ALLEN ADAMS,

                Plaintiff,

v.                                              Case No. 17-cv-699-pp-wed

RANDALL R. HEPP, *et al.*,

                Defendants.

---

## DECISION OVERRULING PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE DUFFIN'S JUNE 6, 2019 ORDER (DKT. NO. 103)

---

Back in December, the court referred the plaintiff's case to Magistrate Judge William Duffin to handle all pretrial proceedings. Dkt. No. 62. In the next two weeks, the court received three letters from the plaintiff. Dkt. Nos. 63, 64, 65. Judge Duffin held a telephone hearing on January 4, 2019 to address the plaintiff's concerns. Dkt. No. 66. Two weeks later, the court received another letter. Dkt. No. 67. Judge Duffin held another hearing. Dkt. No. 68. Within the next month, the court received another motion and two more letters from the plaintiff. Dkt. Nos. 69, 70, 71. At this point, Judge Duffin issued an order describing what had happened up to that point and denying the plaintiff's motion asking to reinstate a defendant, proceed against additional defendants, compel discovery and appoint counsel. Dkt. No. 73 (denying plaintiff's motion at Dkt. No. 69). The plaintiff objected, dkt. no. 75; this court overruled that objection, dkt. no. 78. The plaintiff, undeterred, filed another motion to compel the defendants to produce discovery, arguing that it was his

1

understanding that anything he filed was filed under penalty of perjury, and that his motions constituted good-faith efforts to work out his discovery issues with the defendants. Dkt. No. 79. Judge Duffin held *another* hearing, and granted the plaintiff's motion in part. Dkt. No. 83. Despite that fact, the plaintiff objected. Dkt. No. 84. He also filed two motions asking the court to conduct an *in camera* review of some 1,700 emails he alleges are involved in three cases. Dkt. Nos. 85, 86. Judge Duffin issued an order granting in part and denying in part the plaintiff's motions. Dkt. No. 87. The plaintiff filed another motion to compel—seventeen, hand-written pages. Dkt. No. 88. Judge Duffin partially granted that motion. Dkt. No. 90. The plaintiff objected to *that* order. Dkt. No. 103. The court addresses that objection.

The district court applies a "clear-error standard" when it reviews a party's objections to a magistrate judge's order; this standard requires the district judge to give great deference to the magistrate judge's decision. Dkt. No. 78. A district judge will modify a magistrate judge's decision only if he or she is convinced that the magistrate judge made a mistake. McGuire v. Carrier Corp., 09-cv-315, 2010 WL 231099, at *1 (S.D. Ind. Jan. 13, 2010) (citing Weeks v. Samsung Heavy Indus. Co., Ltd., 126 F.3d 926, 943 (7th Cir. 1997)). The mere fact that a district judge would have come to a different conclusion is an insufficient basis to modify the magistrate judge's order. Id.

In the plaintiff's May 29 motion to compel, the plaintiff alleged—as he has time and again—that the defendants were withholding discovery. Dkt. No. 88. Specifically, he detailed the many obstacles he faced in reviewing his

medical file. He asserted that he had flagged certain records for copying, but that he never received them. He also explained that he had very limited time to review the records and was not allowed to take notes. The plaintiff also believed that the defendants were withholding relevant emails and that defendant Regina Henrichs had maintained a file that contained documents about his diet that were not in his medical file. The plaintiff also complained that he hadn't been able to depose the defendants and that they had not produced their medical licenses or any complaints that had been made against them during their careers. Finally, the plaintiff argued that the defendants were required to produce documents about the water quality issues at Fox Lake Correctional.

Judge Duffin ordered the defendants to work with the plaintiff to ensure that he had adequate time to review his medical file and an opportunity to obtain copies of the records he wanted. Dkt. No. 90 at 2. He also ordered the defense lawyer to review Henrichs' file and produce any relevant, non-privileged documents that the defense had not already produced or that were not included in the plaintiff's medical records. Id. at 4.

Finally, Judge Duffin denied the plaintiff's request to order the defendants to respond to his discovery requests about the water quality at Fox Lake. Id. Judge Duffin explained that this topic had been addressed at a January 2019 hearing, and repeated his conclusion that water quality was not at issue in this case, meaning that the defendants did not have to produce documents related to that issue. Id.

Less than a week later, the court received the plaintiff's objections to Judge Duffin's order. Dkt. No. 103. He raises the following issues: (1) he believes he is entitled to discovery related to the water issues at Fox Lake Correctional because, in its screening order, the court allowed the plaintiff to proceed against defendant Candi Whitman, the Fox Lake health services manager, "over the water issue"; (2) he objects to defense counsel's refusal to respond to his discovery requests—in particular, her refusal to provide him with copies of "the 150 HRS forms"; (3) he says that the Henrichs file is relevant; (4) while it is not clear, he appears to want the court to require the defendants to produce *all* email communication between the defendants about him; (5) he complains that defense counsel has refused to provide him with the defendants' professional licenses and explain whether they ever lost their licenses or have been sued for violating the rights of other patients; (6) he complains that the "person doing" the Health Services Unit records reviews is not providing him access to all of his records, and says that he has flagged records for copying that he never received or saw again; and (7) he asks whether he is not entitled to depose the defendants, and asserts that he is being taken advantage of because he does not have a lawyer.

In considering these objections, it helps to recount the claims on which this court allowed the plaintiff to proceed. The court allowed him to proceed on a claim that Nurse Dawn P., Nurse Truen, Nurse Practitioner Frank[1] and Dr.

---

[1] Identified in the answer as Dawn Proehl, Rebecca Trewyn and Robert Frank. Dkt. No. 58 at 1.

Larson were deliberately indifferent to his serious medical needs when they ignored or minimized his complaints about his medical condition, refused to provide him with pain relief and refused or delayed a physical examination. Dkt. No. 48 at 8. The court allowed the plaintiff to proceed on a deliberate indifference claim against Henrichs (based on his allegations that she denied him a special diet even though she acknowledged that he needed one), Whitman (based on his allegations that she denied his request for bottled water despite independent information that people with his condition should not drink tap water), Floeter (based on his allegations that she delayed scheduling his surgery even after Frank reminded her to schedule it), Nurse Jane Doe[2] and CO DeBrees[3] (based on his allegation that they refused to allow him the use of a private area to self-administer two enemas) and Hepp (based on his claim that even though the plaintiff complained about HSU's alleged inadequate response, Hepp did not intervene). Id. at 8-9.

I.  **Water Quality at Fox Lake Correctional**

At a hearing on January 4, 2019, the plaintiff told Judge Duffin that he saw staff at Fox Lake taking water samples from the fire hydrants and sending them to the Department of Natural Resources, claiming they were independently tested when they were not. Dkt. No. 66 at 3. The plaintiff told

---

[2] At the February 8, 2019 hearing before Judge Duffin, the defendant waived his request to substitute the name of the Jane Doe nurse, saying that he was happy with the defendants he already had and that adding her would not make a difference. Dkt. No. 68. Judge Duffin dismissed Jane Doe as a defendant. Id. at 4. The plaintiff later sought to reinstate the Jane Doe defendant, dkt. no. 69 at 2; Judge Duffin denied this request, dkt. no. 73 at 3-4.

[3] Identified in the answer as Jeff Devries. Dkt. No. 58 at 1.

Judge Duffin that Fox Lake got its water from fire hydrants, and argued that this was one of the claims in his case. Id. Defense counsel responded that in December 2018, the plaintiff had made a discovery demand for water samples, but she had not provided such samples (and did not plan to) because she did not understand the plaintiff's case to involve a challenge to the quality of the water at Fox Lake. Id. Defense counsel said she had understood that the plaintiff had made claims about his medical treatment and his diet. Id. Judge Duffin encouraged the plaintiff to stay focused on the issues relating to his medical care. Id. at 4. When the plaintiff asked whether he had to prove what caused his medical issues, Judge Duffin responded that the plaintiff's deliberate indifference claims were not about his health before he got to prison, or any health problems he developed while he was in prison; his claims were about the medical care that he did or did not receive while in prison. Id.

In his June 6, 2019 order, Judge Duffin was more direct. Dkt. No. 90. He stated that he agreed with defense counsel at the January 4, 2019 hearing that discovery requests about the water quality at Fox Lake were not relevant to the plaintiff's claims. Id. at 4. He stated, "Despite Adams's characterizations to the contrary, whether the water quality at Fox Lake was adequate is not an issue in this case." Id.

In his objection, the plaintiff says that Judge Duffin was wrong, and that this court—Judge Pepper—explicitly told him that it would allow him to proceed against the Health Services Manager at Fox Lake, "over the water issue." Dkt. No. 103. At 1. He also says that he made allegations about the

6

quality of the water at Fox Lake in the amended complaint. Id. He asserts that for someone with advanced liver disease (like the plaintiff), drinking water with high levels of certain heavy metals is toxic. Id. at 2. He argues that defendant Whitman gave bottled water to inmates who came to the HSU for their meds, and asks why she did that if there was nothing wrong with the water. Id.

This court did *not* allow the plaintiff to proceed on a claim regarding the water quality at Fox Lake. It is true that in his amended complaint, the plaintiff described what he believed to be the poor quality of the water at the institution. Dkt. No. 33 at 10. The plaintiff assumed that the "logical cause" of his chronic persistent diarrhea was the water; he alleged that Whitman would have been aware of the water problems because Fox Lake was being sued in the federal court for the Western District on the basis of the water quality. Id. He asserted that he had "filed administrative complaints about . . . Whitman's refusal to provide [him] with bottled water." Id.

In its screening order, the court recounted the facts this way:

> The plaintiff also alleges that, after he saw an article in the prison legal news about tainted water at Fox Lake and the dangers it imposed, he made requests to defendant Candi Whitman that he be permitted to receive bottled water. [citation omitted] The plaintiff asserts that Whitman denied his request, telling him that "magnesium is good for you." [citation omitted] The plaintiff says he told Whitman that the issue was *manganese*, and that he asked to be tested for heavy metal poisoning, but that Whitman said there was no evidence for it. [citation omitted]

Dkt. No. 48 at 8. In the analysis section of the court's order, the court stated that it would allow the plaintiff to proceed "on a deliberate indifference claim against . . . Whitman, based on his allegations that she denied his request for

7

bottled water despite independent information that people in his condition should not drink bottled water." Id. at 8-9.

The court allowed the plaintiff to sue Whitman for refusing to give him bottled water when he asked for it on health grounds. The court would not have allowed the plaintiff to sue Whitman based on the quality of the water at Fox Lake. Whitman was the HSU manager. She did not control the quality of the water at the institution. The amended complaint did not identify anyone as being responsible for the water quality at Fox Lake. The amended complaint did not ask for damages based on the water quality at Fox Lake. The amended complaint did not seek injunctive relief regarding the water quality at Fox Lake. The amended complaint asked for damages against the defendants—including Whitmore—for their alleged "deliberate indifference to [the plaintiff's] serious medical needs, and for [his] physical, emotional and psychological pain and suffering as a result of their failure to properly treat [him]." Dkt. No. 33 at 11.

This court allowed has allowed the plaintiff to proceed on deliberate indifference claims—claims that various defendants did not respond to or properly treat his medical needs. Judge Duffin's conclusion that the plaintiff is not entitled to discovery on the water quality at Fox Lake is not clearly erroneous or contrary to law. It is correct. The court overrules the plaintiff's objection, and reiterates that the defendants are not required to respond to any discovery demands the plaintiff may have made regarding the quality of the water at Fox Lake.

## II. Health Service Request Forms

Judge Duffin ordered that the plaintiff could pay for a copy of his entire medical file, "including treatment records, health services requests, and correspondence by health services staff about [the plaintiff] (to the extent those documents have not already been produced)." Dkt. No. 90 at 2. Judge Duffin also ordered that if the plaintiff didn't have the money to pay to copy the whole file (or if he didn't want to copy the whole file), the defendants must give him a "meaningful opportunity" to review the file—a minimum of three hours, with the ability to take notes, prior to June 18, 2019. Id.

On June 18, 2019, the defendants filed a notice explaining that defense counsel had spoken to the plaintiff that day for about twenty minutes, to determine the status of the plaintiff's medical records request. Dkt. No. 109. According to the defendants, the plaintiff confirmed that he had received more than 1,000 pages of health services unit records in December 2018, as well as all the summary judgment materials, and that he'd agreed that any documents about his diet "would be contained in the HSU file." Id. at 1. During the call, the plaintiff asked for his psychological services unit file; even though the plaintiff had *not* asked for that file in discovery, defense counsel indicated that the records were being sent to the plaintiff that day. Id. at 1-2. Counsel stated that at the end of the call, the plaintiff "indicated that there were no further issues/requests that are outstanding." Id. at 2.

The plaintiff's objection says that defense counsel "has refused to produce the 150 HSRs forms, even though she has them." Dkt. No. 103 at 3.

This is not an objection to Judge Duffin's order. Judge Duffin did exactly what the plaintiff asked—he ordered the defendants to make the plaintiff's whole HSU file available to him. The defendants have provided the plaintiff with a thousand pages. If the plaintiff intended this statement to be an objection, the court overrules it. There is nothing clearly erroneous or contrary to law about Judge Duffin's order requiring the defendants to provide the HSU file.

### III. Henrichs' File of Documents Relating to the Plaintiff's Diet

Judge Duffin's order said,

> The court will require defendants' counsel to inform Adams whether she located Henrichs's file and, if she did, what the file contains. If the file contains responsive, non-privileged documents that have not already been produced or that were not part of Adams's medical file, the defendants must produce those documents to Adams by **June 21, 2019**.

Dkt. No. 90 at 4.

The plaintiff's "objection" reiterates his assertions that Heinrichs created a file containing every document relating to his diet issues, that one of Heinrichs's co-workers had showed the plaintiff the file and told him the documents were related to Henrichs's lack of treatment of his diet issues and that the documents in the file are relevant. Dkt. No. 103 at 3. The plaintiff already has told the court this—that is why Judge Duffin ordered the defendants to try to locate the file and turn over non-privileged documents. There's nothing for the plaintiff to object to. To the extent that this is an objection, the court will overrule it; Judge Duffin's order was not clearly erroneous or contrary to law.

**IV. Email Correspondence Between Defendants About the Plaintiff**

At the April 30, 2019 hearing, defense counsel told Judge Duffin that the plaintiff had asked for communications between the defendants about the plaintiff. Dkt. No. 82 at 1. She told the judge that she ran a search, using the plaintiff's DOC number, his name and the defendants' names. Id. The search resulted in 1,700 emails, but she indicated that not all the emails were responsive, some might be privileged and not all of them were related to the plaintiff's health care information. Id. at 1-2. She told Judge Duffin that the relevant, non-privileged emails would be completed by early the following week and sent to the plaintiff. Id. at 2. In an order dated May 17, 2019, Judge Duffin noted that the plaintiff had reported receiving 1,000 emails on May 6, 2019. Dkt. No. 87. The plaintiff then had asked the court to review *in camera* the emails the defendants had not produced. Id. at 1. The plaintiff had told the court that only about 200 of the emails weren't duplicates, and that defense counsel had told him that the documents she didn't produce were privileged; the plaintiff asserted that he did not believe this. Id. Judge Duffin ordered the defendants to prepare a privilege log for the emails that weren't produced. Id. at 2. He ordered that the plaintiff could review the log, and if the plaintiff didn't agree with a designation, he should confer with defense counsel; if the parties were not able to resolve their disputes in that regard directly, the plaintiff could seek *in camera* review of the disputed email. Id. Finally, Judge Duffin required defense counsel to send him the non-duplicative, non-privileged emails that the

defendants believed weren't responsive to the plaintiff's request, so that the judge could review them. Id. at 2-3.

In his May 29, 2019 motion to compel, the plaintiff said, "If there are in fact only 1700 emails, Every email transmitted I'm entitled to." Dkt. No. 88 at 5.

On May 31, 2019, the court received a document from the defendants, indicating that "all emails and documents are being produced to the court on today's date." Dkt. No. 89. The document said that the defendants had been mistaken in asserting that some of the emails were privileged; the emails they hadn't produced had been emails that weren't responsive to the plaintiff's requests. Id.

After reviewing the emails *in camera*, Judge Duffin ordered the defendants to produce an additional nineteen documents that he had concluded were arguably relevant to the plaintiff's claims. Dkt. No. 90 at 1. He ordered the defendants to produce those documents (with any necessary redactions) to the plaintiff by June 14, 2019. Id.

The plaintiff's objection to this order asserts that his claim "is and has always been ongoing." Dkt. No. 103 at 3. He says that the defendants have told him "inhuman" things to his face countless times. Id. He asserts his belief that all the emails are relevant to the defendants' states of mind, because they come from the same defendants who allegedly worked together to keep him from receiving the care he needed. Id. at 4. He says that if the defendants are making disparaging remarks about him in emails, including what they believe

defendants believed weren't responsive to the plaintiff's request, so that the judge could review them. Id. at 2-3.

In his May 29, 2019 motion to compel, the plaintiff said, "If there are in fact only 1700 emails, Every email transmitted I'm entitled to." Dkt. No. 88 at 5.

On May 31, 2019, the court received a document from the defendants, indicating that "all emails and documents are being produced to the court on today's date." Dkt. No. 89. The document said that the defendants had been mistaken in asserting that some of the emails were privileged; the emails they hadn't produced had been emails that weren't responsive to the plaintiff's requests. Id.

After reviewing the emails *in camera*, Judge Duffin ordered the defendants to produce an additional nineteen documents that he had concluded were arguably relevant to the plaintiff's claims. Dkt. No. 90 at 1. He ordered the defendants to produce those documents (with any necessary redactions) to the plaintiff by June 14, 2019. Id.

The plaintiff's objection to this order asserts that his claim "is and has always been ongoing." Dkt. No. 103 at 3. He says that the defendants have told him "inhuman" things to his face countless times. Id. He asserts his belief that all the emails are relevant to the defendants' states of mind, because they come from the same defendants who allegedly worked together to keep him from receiving the care he needed. Id. at 4. He says that if the defendants are making disparaging remarks about him in emails, including what they believe

about his medical complaints and his medical needs, this would show that they intended to knowingly deprive him of the care he needed. Id.

The plaintiff is not entitled to emails that are not relevant to his claims of deliberate indifference. "Relevant" emails are emails that have a tendency to make a fact that is of consequence to the case more or less probable than it would be without the evidence. See Fed. R. Civ. P. 401. The simple fact that the emails are between some of the defendants and relate to the plaintiff does not mean that they are relevant to his claims that the defendants were deliberately indifference to the plaintiff's medical needs. The court can imagine communications between the defendants about the plaintiff that would not be relevant to his claims of deliberate indifference: the HSU manager might remind a nurse to update the plaintiff's chart or files. A nurse might inform the doctor that the institution was out of certain medications prescribed to the plaintiff and that they would need to re-order. Judge Duffin—a federal judge—reviewed the emails that the defendants did not produce. He found nineteen that he thought might have some relevance to the plaintiff's claims. If he'd found others, he would have required the defendant to turn them over.

Judge Duffin's order that the defendants do not have to produce the remaining emails was not clearly erroneous or contrary to law, and the court overrules this objection.

## V. The Defendants' Professional Licenses and Litigation History

In his May 29, 2019 motion to compel, the plaintiff said that defense counsel told him she would "consider later on down the road" whether to

comply with his discovery demand asking for the medical defendants' licenses, asking whether they'd ever lost their right to practice medicine, and whether they'd ever been sued for malpractice or for violating an inmate's constitutional rights. Dkt. No. 88 at 14.

Judge Duffin did not address this request in his June 6, 2019 order, so there is nothing for the court to review for clear error in this regard. The court notes, however, that the plaintiff has not filed a malpractice lawsuit. If he had, this court would not have allowed him to proceed in federal court. "[T]he Supreme Court has determined that plaintiffs must show more than mere evidence of malpractice to prove deliberate indifference." Petties v. Carter, 836 F.3d 722, 728 (7th Cir. 2016) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)). Nor is this information relevant at this stage of the litigation—the summary judgment stage. At the summary judgment stage, the plaintiff must present evidence to indicate that there is a genuine dispute of material fact for a jury to decide with regard to the elements the plaintiff would have to prove at trial—whether he had an objectively serious medical need (which the defendants have conceded for the purposes of summary judgment, dkt. no. 92 at 15) and whether the defendants exhibited deliberate indifference to that need. Information about their licenses, prior loss of practice privilege or other lawsuits is not relevant to whether the plaintiff has identified genuine issues of material fact regarding whether the defendants were deliberately indifferent to his medical needs during the period identified in the amended complaint.

## VI. Medical Records

Judge Duffin's June 6, 2019 order granted the plaintiff's request for his medical file. First, Judge Duffin ordered the defendants to assist the plaintiff in obtaining the documents. Dkt. No. 90 at 2. Second, he proposed two options for the plaintiff to have access to the file—either he could pay for a copy of the whole file, or prior to June 18, 2019, the defendants had to give him a minimum of three hours to review the file, with the opportunity to take notes. Id.

The plaintiff's objection says that the person doing the HSU reviews was not providing him access to all his records. Dkt. No. 103 at 4. He says he's flagged records for copying, but hasn't received the copies and hasn't seen the records again. Id. at 4-5.

Judge Duffin's order was not clearly erroneous or contrary to law—it gave the plaintiff exactly what he was looking for. If the plaintiff is trying to indicate that the defendants are not complying with Judge Duffin's order, the way to do it is not to object to Judge Duffin's order. The court will overrule this objection.

## VII. Depositions

In his May 29, 2019 motion to compel, the plaintiff stated that he had asked to depose all the defendants, and the defendants' counsel had completely ignored "over a 1/2 dozen such request." Dkt. No. 88 at 14. He speculated that "perhaps as a victim," he had no right to depose his victimizers, and asserted that if he had a lawyer, the lawyer would have deposed the defendants a long

15

time ago. Id. Judge Duffin did not address this issue in his June 6, 2019 order. In his objection, the plaintiff asks, "Am I not [e]ntitled to depose the defendants[?]" Dkt. No. 103 at 6.

This court issued its scheduling order on October 30, 2018. Dkt. No. 59. It gave the parties a deadline of April 1, 2019 to conduct discovery—five months. Judge Duffin extended that deadline to May 1, 2019, giving the parties six months to complete discovery. Dkt. No. 68.

The plaintiff says that he asked defense counsel to depose the defendants. But that is not the proper way to seek a deposition. Federal Rule of Civil Procedure 30(b) requires someone who wants to conduct a deposition to provide all the other parties with a written notice, stating the time and place of the deposition and the name of the person to be deposed; the notice must be provided within a "reasonable" time in advance of the time scheduled for the deposition. The party seeking the deposition must arrange for the deposition to be conducted before an officer who is appointed or designated under Fed. R. Civ. P. 28 (generally, a person who is authorized under federal law to administer oaths). Rule 30(b)(5)(A). The party who arranges a deposition "bears the recording costs;" that means that the party arranging the deposition must arrange for a court reporter or other official to record the deposition, and must pay for it. Rule 30(b)(3)(A). Even when a court allows a plaintiff to proceed without prepaying a filing fee, it cannot waive the cost of recording a deposition, nor can it pay that cost for the party seeking the deposition.

The court understands that the plaintiff likely could not have made these arrangements from prison; most incarcerated plaintiffs cannot. But there was another tool the plaintiff could use to obtain the information that he might have obtained in depositions. He could have served interrogatories on the defendants. Fed. R. Civ. P. 33(a)(1) allows a party to serve up to twenty-five written interrogatories on any other party, and allows a party to ask the court's permission to serve more than twenty-five. Incarcerated plaintiffs can use interrogatories to ask the kinds of questions that they would otherwise ask in a deposition. The plaintiff *did* serve interrogatories on the defendants. In an untitled pleading the court received on February 13, 2019, the plaintiff said that on December 28, 2018, he served four interrogatories on the defendants. Dkt. No. 69 at 3. He included with the pleading a copy of the actual interrogatories; there appear to have been seven of them. Id. at 22-23. The court will overrule this objection.

**VIII. Conclusion**

The court **OVERRULES** the plaintiff's objections to Judge Duffin's June 6, 2019 order. Dkt. No. 103.

Dated in Milwaukee, Wisconsin, this 2nd day of August, 2019.

                                          **BY THE COURT:**

                                          **HON. PAMELA PEPPER**
                                          **United States District Judge**